Citation Nr: 1518694 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 10-32 014A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

1. Whether new and material evidence has been submitted to reopen a previously denied claim of entitlement to service connection for prostate cancer.

2. Entitlement to service connection for the residuals of prostate cancer.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

R. Sauter, Associate Counsel



INTRODUCTION

The Veteran served on active duty from June 1968 to March 1972.

The issue of entitlement to a total disability rating based on individual unemployability (TDIU) has been raised by the record in a December 2007 statement, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014).


FINDINGS OF FACT

1. Service connection for prostate cancer was previously denied in December 2007. The Veteran was notified of the decision but did not perfect his appeal and new evidence was not submitted within one year of the rating decision.
 
2. Evidence obtained since December 2007 is new and material to the claim.
 
3. The Veteran does not have "service in the Republic of Vietnam," was not presumptively exposed to herbicides during active service, and was not actually exposed to herbicides during service.

4. Prostate cancer did not begin during, or for several years after, active service and is not otherwise related to service.


CONCLUSIONS OF LAW

1. The December 2007 rating decision, which denied entitlement to service connection for prostate cancer, is final; new and material evidence has been submitted, and the claim is reopened. 38 U.S.C.A. §§ 5108, 7105 (West 2014); 
38 C.F.R. §§ 3.104(a), 3.156, 20.302, 20.1103 (2014). 

2. Residuals of prostate cancer were not incurred in or aggravated by service nor presumed to be caused by herbicide exposure in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

New and Material Evidence

The Veteran's claim for service connection for prostate cancer was previously denied in December 2007. He did not perfect an appeal and the decision became final. Previously denied claims may be reopened by the submission of new and material evidence. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156.

In December 2007, the claim was denied because the Veteran did not have service in the Republic of Vietnam, and thus exposure to herbicides was not established. Since December 2007, he has submitted additional statements to provide more detailed support for his claim that he was exposed to Agent Orange at Eglin Air Force Base, and not in Vietnam. Specifically, he stated in his March 2010 notice of disagreement that his job duties required him to tour testing facilities throughout the base. Accordingly, these additional details constitute new evidence.

Furthermore, these new details relating to the Veteran's job duties which may have brought him in contact with Agent Orange raise a reasonable possibility of substantiating the claim and are therefore "material." See Shade v. Shinseki, 24 Vet. App. 110, 118 (2010). As such, new and material evidence has been presented and the claim is reopened.

Service Connection for Residuals of Prostate Cancer

The Veteran is seeking service connection for residuals of prostate cancer. He has not asserted, and the evidence does not establish, that prostate cancer began during his active service. Service treatment records do not indicate that he sought treatment, or made any complaint of, prostate cancer during active service. Accordingly, in-service occurrence is not established.

The Veteran instead claims that his prostate cancer was caused by exposure to Agent Orange. Service connection may be granted on a presumptive basis for certain diseases, including prostate cancer, associated with exposure to certain herbicide agents. 38 C.F.R. §§ 3.307, 3.309. The evidence of record shows that prostate cancer was diagnosed in April 2002. The record does not show, and he does not contend that he service in the Republic of Vietnam. Thus, he is not presumed to be exposed to herbicides. See 38 U.S.C.A. § 1116(f) (West 2014); 
38 C.F.R. § 3.307(a)(6)(iii). 

Consequently, in order to be afforded presumptive service connection under 
38 C.F.R. § 3.307, the evidence must establish that the Veteran was actually exposed to herbicide agents during his active service. To that end, he contends that he was exposed while he was stationed at Eglin Air Force Base in Florida from 1969 to 1972. In statements of November 2007 and March 2010, he expressed his belief that Agent Orange was used throughout the base to control vegetation. He stated that "longtime base personnel" told him that Agent Orange was used on the sidewalks in base housing to keep down the weeds. He did not identify the person who told him Agent Orange was used throughout the base, nor did he offer any additional evidence to support this contention. 

He has not indicated that he, or the unidentified base personnel, possesses any specialized knowledge in the scientific field such that they could determine without testing that herbicides were present in the areas of Eglin Air Force Base where he was present. In Bardwell v. Shinseki, 24 Vet. App. 36 (2010), the Court held that a layperson's assertions indicating exposure to gases or chemicals during service are not sufficient evidence alone to establish that such an event actually occurred during service. Rather, those statements must be weighed against other evidence of record, including lack of documentary evidence of the incident.

To that end, the Board places greater probative value on the expert reports generated to address the type and extent of herbicide use at Eglin Air Force Base. The evidence is uncontroverted that herbicides were tested at the base during the time the Veteran was stationed there. A September 2014 formal finding of the RO indicates that trial tests for evaluation of herbicide spray systems and techniques were conducted at Eglin Air Force Base during November and December 1952 and from June 11, 1968 through September 12, 1968. Additionally, during the period from 1962 to 1970, a 2-mile square area of Eglin was used to test various herbicides. Department of Defense records show that herbicides were stored at Hardstand 7, an asphalt and concrete aircraft parking area on the main Eglin Air Force Base airdrome. 

The evidence shows strongly that the Veteran was a good officer and the recipient of numerous awards and commendations. Nonetheless, even accepting as true that he was told that Agent Orange was used throughout the base, the evidence does not weigh in favor of a finding that he was exposed to Agent Orange. Rather, the evidence shows that Agent Orange was only used in an isolated 2-mile square area of the over 700 square mile base. 

The Veteran's DD 214 indicates his military occupational specialty (MOS) was production officer for the armament center. He submitted evidence showing that his responsibilities included generating reports, escorting dignitaries, submitting financial and technical data, and participating in the procurement of non-nuclear munitions. He stated that his job duties required him to tour the entire base, including some fields used for testing. In an April 2009 statement, he noted that his work specifically involved non-nuclear munitions, such as cluster bombs and fuses and conventional bombs. He does not allege, and his MOS does not suggest that his duties included any part of the herbicide testing. Moreover, it is unlikely that he would have escorted dignitaries to the herbicide testing site, when his work primarily involved testing and procurement of munitions. 

The Veteran's MOS and job duties do not suggest that he was directly related to herbicide testing at the base. His mere presence at Eglin during the relevant time frame, without more, is not sufficient to grant service connection based on presumptive herbicide exposure. Because exposure to herbicides is not established, presumptive service connection for residuals of prostate cancer is not warranted.

Next, the evidence does not establish that residuals of prostate cancer are otherwise related to active service. The Veteran testified that he was not diagnosed with prostate cancer until approximately 2002, approximately thirty years after his separation from active service. The evidence that it was not shown in service or for many years thereafter weighs against in-service incurrence or continuity of symptomatology.

In sum, the evidence does not establish that the Veteran's prostate cancer began during, or was otherwise related to, his active duty service. Rather, the condition began several decades after separation. He was not presumptively exposed to Agent Orange, and the evidence does not otherwise establish he was exposed to herbicides during active service. Therefore, the evidence does not establish that residuals of prostate cancer are due to active service, and service connection is denied.

Finally, as provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 
38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

Here, the VCAA duty to notify was satisfied by way of a letter sent to the Veteran in May 2009 that fully addressed all notice elements, and was sent prior to the initial RO decision in this matter. The letter informed him of what evidence was required to substantiate the claim, of the respective duties for obtaining evidence, and what type of information and evidence was needed to establish disability ratings and effective dates. Under these circumstances, the Board finds that the notification requirements of the VCAA have been satisfied as to both timing and content.

Next, VA has a duty to assist a veteran in the development of the claim. This duty includes assisting him or her in the procurement of service treatment records and other pertinent records, and providing an examination when necessary. See 
38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2014). Service treatment records and post-service private and VA treatment records have all been obtained and associated with the claims file. 

The Board acknowledges the Veteran was not provided with an examination to assess his prostate cancer residuals. VA medical examinations must be provided with there is competent evidence of a current disability, evidence establishing an in-service injury or event, and any indication that the disability may be related to the in-service event. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). As noted above, the evidence does not establish any in-service injury or event, or any nexus to active service. Accordingly, a VA examination was not required.

VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.


ORDER

New and material evidence having been submitted, the application to reopen a claim of entitlement to service connection for prostate cancer is granted.

Service connection for residuals of prostate cancer is denied.



____________________________________________
L. HOWELL
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs