Citation Nr: AXXXXXXXX
Decision Date: 07/14/21 Archive Date: 07/14/21

DOCKET NO. 200106-53717
DATE: July 14, 2021

ORDER

Entitlement to service connection for a left knee disorder is denied.

Entitlement to service connection for a right knee disorder is denied.

Entitlement to service connection for chest pain is denied.

REMANDED

Entitlement to service connection for headaches is remanded.

Entitlement to service connection for hypertension is remanded.

FINDINGS OF FACT

1. The preponderance of the evidence is against finding that a left knee disorder is related to an in-service injury or disease, or that left knee osteoarthritis manifested during active duty or was compensably disabling within a year of separation from active duty.

2. The preponderance of the evidence is against finding that a right knee disorder is related to an in-service injury or disease, or that right knee degenerative changes manifested during active duty or was compensably disabling within a year of separation from active duty.

3. The preponderance of the evidence is against finding a current disability manifested by chest pain.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a left knee disorder, to include osteoarthritis have not been met. 38 U.S.C. §§ 1101, 1113, 1131, 1137, 5103A; 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309, 3.326.

2. The criteria for entitlement to service connection for a right knee disorder, to include degenerative changes have not been met. 38 U.S.C. §§ 1101, 1113, 1131, 1137, 5103A; 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309, 3.326.

3. The criteria for entitlement to service connection for chest pain have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. § 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from April 1978 to April 1986. 

These matters are before the Board of Veterans' Appeals (Board) on appeal of a November 2019 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). The Veteran submitted a January 2020 Decision Review Request: Board Appeal (Notice of Disagreement) and elected Direct Review by a Veterans Law Judge. Accordingly, the Board will consider the evidence of record as of the date of the November 2019 rating decision. 

Entitlement to service connection for left and right knee disorders is denied.

The Veteran contends that his left and right knee disorders are related to in-service injuries.

Service connection is established on a direct basis when there is competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. 38 U.S.C. § 1131; Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303 (a), (d).

Where a veteran served continuously for ninety days or more during a period of war, or during peacetime service after December 31, 1946, and arthritis, to include osteoarthritis and degenerative changes, becomes manifest to a degree of 10 percent within one year from the date of termination of active duty, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C. §§ 1101, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. 

On separation examination in March 1986 the Veteran's lower extremities were described as normal and the Veteran denied having or having ever had swollen or painful joints or "trick" or locked knee. In April 1986 the Veteran was seen for a complaint of left knee pain and "partial buckling." The examining physician noted that the injury sounded and felt like a "captured meniscus" though a meniscal tear was doubtful. If symptoms persisted the Veteran was to be referred for arthroscopy. The service treatment records are otherwise silent for knee complaints or any diagnosis of a knee disorder. 

The VA treatment records first note complaints of left knee pain in September 2011. The Veteran reported standing for long periods of time in his job as a cook. An October 2011 x-ray confirmed arthritis in the left knee. 

In a January 2012 VA treatment record the Veteran was seen for left knee pain "for several months now" but he denied any known injury at that time. 

In a February 2014 VA treatment record the Veteran reported bilateral knee pain since "around last summer." He reported that he initially attributed the knee pain as "just from standing a longer period of time," but that he now had to "pick the leg up to move it." He reported being "very active in years past and [his] knees didn't hurt him, and he was able to bend over and pick things up without issue." 

A March 2014 x-ray showed bilateral knee degenerative changes. 

In his July 2019 claim for service connection, the Veteran reported that his bilateral knee disorders began in approximately January 1983 due to physical fitness in the Navy. 

On VA examination in November 2019, the Veteran reported that his knee conditions began in 1981 when he fell going down the stairs. The examiner diagnosed the Veteran with a right knee strain and left knee osteoarthritis. The examiner opined that the left knee osteoarthritis was less likely than not due to the April 1986 injury, reasoning that the in-service injury appeared to have been acute without any chronicity. 

The Board acknowledges that osteoarthritis and degenerative changes are disorders which, if manifest to a degree of 10 percent within one year after separation from active duty, may be presumed to have been incurred in service. The Veteran is not competent to provide a diagnosis of osteoarthritis or degenerative changes or to determine that any symptoms were manifestations of those disorders. The diagnosis of osteoarthritis and degenerative changes is medically complex, as diagnosis of those disorders requires knowledge of interpretation of complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). The Veteran has not shown that he has the medical training, expertise, or experience to offer a competent diagnosis. By contrast, the competent medical evidence of record contains no evidence of a diagnosis of any form of knee arthritis, to include osteoarthritis or degenerative changes during active duty service or within one year thereafter.

The available evidence thus preponderates against finding manifestations sufficient to identify left or right knee arthritis, to include osteoarthritis and degenerative changes in active duty service, or within one year thereafter. Thus, service connection is not warranted on a presumptive basis. 38 C.F.R. §§ 3.307, 3.309.

The Board turns to the question of whether the claimed disabilities are directly related to an in-service injury, to include any in-service knee injury. 

The claims file contains no evidence, other than the Veteran's own contentions regarding an in-service knee injury in 1981 or alternately the onset of knee symptoms in 1983 due to physical fitness training. 

With regard to the aforementioned reports of in-service injuries, and to the extent that the Veteran has alleged any continuous symptoms since service, the Board finds these reports lack credibility. In this regard, the Veteran has provided inconsistent descriptions of the nature and date of onset of his knee disorders, and his reports of knee symptoms in 1981 or 1983 are directly contradicted by the March 1986 report of medical history in which he denied having ever had swollen or painful joints, or "trick" or locked knee. To the extent the Veteran alleges continuous knee symptoms since service, such reports are contradicted by his January 2012 report that knee symptoms began several months prior, and his February 2014 report that knee symptoms began "last summer" and report of previously being free of knee pain and symptoms despite being very active. Notably, the Veteran first attributed his knee disorders to service many decades after separation, in the course of a claim for benefits. See Buchanan v. Nicholson, 451 F.3d 1331 (2006) (the Board can consider bias in lay evidence, the lack of contemporaneous medical records, and significant time delay between the observations and the date on which the statements were written in weighing credibility). As the Board finds these assertions lack credibility, they cannot serve as the basis for finding an in-service injury occurred relating to the claimed knee disorders.

The Board acknowledges that the service treatment record does document an in-service left knee injury. The Veteran has not shown that he has the medical training, expertise, or experience to offer a competent opinion that a current left knee disorder is related to that in-service injury as the etiology of left knee osteoarthritis is medically complex, having multiple possible etiologies. Jandreau, 492 F.3d at 1377 n.4. The Board thus attributes greater probative value to the competent opinion of the November 2019 examiner.

While a medical examination was obtained regarding the left knee disability, and that examination report contains incidental findings relating to the right knee, a medical examination specifically addressing the claimed right knee disability has not been obtained. VA's duty to assist includes providing a medical examination when necessary to make a decision on a claim. 38 U.S.C. § 5103A (d); 38 C.F.R. § 3.159 (c)(4). Such development is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or symptoms of disability, (2) establishes that the veteran suffered an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159 (c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006) (noting that the third element establishes a low threshold and requires only that the evidence "indicates" that there "may" be a nexus between the current disability or symptoms and active service, including equivocal or non-specific medical evidence or credible lay evidence of continuity of symptomatology).

VA's duty to obtain a medical examination specifically regarding the right knee has not been triggered. For the reasons discussed above, the Board finds the evidence does not establish that there was a disease, or injury in service pertaining to the Veteran's right knee. Accordingly, even the low threshold under McLendon has not been met here and VA's duty to provide a VA examination with regard to the right knee is not triggered. See 38 U.S.C. § 5103A; 38 C.F.R. §§ 3.159 (c), 3.326; McLendon, 20 Vet. App. 79; Bardwell v. Shinseki, 24 Vet. App. 36, 39 (2010).

Thus, the preponderance of the evidence is against finding that right and left knee disorders are related to an in-service injury or disease, or that left knee osteoarthritis or right knee degenerative changes were manifested during, or compensably disabling within a year of separation from active duty. The claims are denied.

Entitlement to service connection for chest pain is denied.

The Veteran contends that he is entitlement to service connection for chest pain.

In July 2019 the Veteran claimed entitlement to service connection for chest pain. 

The available medical records contain no documentation of complaints or treatment for chest pain, or any diagnosed disorder manifested by chest pain. Relevant to the claims period, the Veteran denied experiencing chest pain in July 2018, October 2018, and April 2019. The Veteran was seen for a complaint of coughing and chest congestion with sinus pain for two weeks in March 2019. There is no indication that these symptoms were manifestations of any underlying chest disorder. 

The Veteran is competent to report his symptoms, to include experiencing pain. However, in this case the Veteran has not specifically described experiencing chest pain at any time during the period on appeal. 

The Board concludes the Veteran does not have a current disability manifested by chest pain and he has not had such a disability at any time during the pendency of the claim or recent to the filing of the claim. 38 U.S.C. §§ 1131, 5107(b); Holton, 557 F.3d at 1366; Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303 (a), (d). Moreover, there is no indication of any functional impairment attributable to chest pain. The preponderance of the evidence in this case is against finding a current disability manifested by chest pain. 

The Board acknowledges that the service treatment records document a complaint of occasional chest pain on entrance to service in February 1978. However, the requirement of having a current disability is met "when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim." See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). The symptoms noted in the service treatment record are too remote from the current claims period to support a finding that the Veteran has a current sinus disability. 

The Board acknowledges that a medical examination has not been obtained addressing the claimed chest pain. VA's duty to assist includes providing a medical examination when necessary to make a decision on a claim. 38 U.S.C. § 5103A(d); 38 C.F.R. § 3.159 (c)(4). 

While a medical examination has not been obtained regarding the nature and etiology of any chest pain, for the reasons discussed above the Board finds the record does not establish competent evidence of a diagnosed disability or symptoms of disability manifested by chest pain. Accordingly, even the low threshold under McLendon has not been met here and VA's duty to provide a VA examination is not triggered. See 38 U.S.C. § 5103A; 38 C.F.R. §§ 3.159 (c), 3.326; McLendon, 20 Vet. App. 79.

Based on the foregoing, the preponderance of the evidence of record is against finding that the Veteran has chest pain for which service connection can be granted during the claims period. As the evidence preponderates against finding a disability for which service connection may be granted, service connection is not warranted, and the claim is denied. Brammer v. Derwinski, 3 Vet. App. 223 (1992).

REASONS FOR REMAND

Entitlement to service connection for headaches is remanded.

The Veteran was provided a VA examination regarding his claimed headaches in November 2019. The examiner diagnosed tension headaches, but opined the disorder was less likely than not related to active duty service on the basis that there were "no complaints, diagnosis, or treatment of this headache condition while in service." However, the Veteran's March 1986 separation examination notes "frequent muscular tension [headaches]." Failure to obtain an adequate medical opinion which considers all relevant evidence was a pre-decisional duty to assist error requiring remand. 

Entitlement to service connection for hypertension is remanded.

The Veteran has not been provided a VA examination to consider the nature and etiology of his claimed hypertension. The service treatment records contain elevated blood pressure readings including 146/102 in August 1983, 144/100 in April 1984, and 144/90 in May 1985. VA treatment records note current hypertension. Hypertension is a presumptive chronic disease under 38 C.F.R. § 3.309(a); the presumption serves as the indication that current hypertension and elevated blood pressure readings in service may be related. Failure to obtain a medical examination to consider the nature and etiology of hypertension was a pre-decisional duty to assist error requiring remand. 

The matters are REMANDED for the following action:

1. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any claimed headaches. The examiner should state: 

a. What diagnosed headaches have been present at any time since July 16, 2019? 

b. For any such headaches: are they at least as likely as not related to an illness, event, or injury in service, to include the March 1986 separation examination note of "frequent muscular tension [headaches]?" 

2. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of hypertension. The examiner should state: 

a. What diagnosed hypertension has been present at any time since July 16, 2019? 

(Continued on the next page)

 

b. For any such hypertension: is it at least as likely as not that the hypertension had its onset in service or is otherwise related to an illness, event, or injury in service, to include elevated blood pressure readings of 146/102 in August 1983, 144/100 in April 1984, and 144/90 in May 1985?

 

 

LAURA E. COLLINS

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Paul J. Bametzreider

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.