﻿Citation Nr: AXXXXXXXX
Decision Date: 05/29/20 Archive Date: 05/29/20

DOCKET NO. 200115-54968
DATE: May 29, 2020

 ORDER

Readjudication of a claim for entitlement to service connection for a bilateral hip disorder is granted.

Readjudication of a claim for entitlement to service connection for a nasal disorder is granted.

The claim for service connection for a nasal disorder is denied.

REMANDED

The claim for service connection for a bilateral hip condition is remanded.

FINDINGS OF FACT

1. In October 2018, the Regional Office (RO) denied the Veteran’s claim for entitlement to service connection for bilateral hip disorder; the Veteran did not express timely disagreement or submit new and relevant evidence within one year, and the decision became final.

2. Since the last decision of October 2018, the RO received additional VA treatment records and a lay statement that is relevant to the Veteran’s claim of bilateral hip disorder. 

3. In October 2018, the RO denied the Veteran’s claim for entitlement to service connection for nasal disorder; the Veteran did not express timely disagreement or submit new and relevant evidence within one year, and the decision became final

4. Since the last decision of October 2018, the RO received additional VA treatment records and a lay statement that is relevant to the Veteran’s claim of nasal disorder.

5. The competent and credible evidence of record reflects that the Veteran’s nasal disorder did not occur in, was not aggravated by and is not otherwise attributable to service.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claims for entitlement to service connection for bilateral hip disorder and nasal disorder have been met. 38 C.F.R. §§ 3.156(d), 3.2501.

2. The criteria for entitlement to service connection for nasal disorder have not been met. 38 U.S.C. § 1110; 38 C.F.R. § 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service from January 2004 to January 2008 in the U.S. Army and active duty for training (ACDUTRA) from January 4 to January 7, 2010; January 11 to January 14, 2010; and January 20, 2010 to January 30, 2010.

These matters come before the Board of Veterans’ Appeals (Board) on appeal from a December 2019 Appeals Modernization Act (AMA) rating decision. The Veteran timely appealed this rating decision to the Board by requesting the AMA Direct Review lane for a reevaluation of the evidence considered by the Agency of Original Jurisdiction (AOJ).

By availing herself of Direct Review by a Veterans Law Judge, the Veteran declined a Board hearing and agreed not to submit any additional evidence in support of her appeal. See January 15, 2020 other (VA Form 10182, p.1, part II). In other words, the Board’s analysis and decision herein is limited to the evidence which the AOJ considered in the December 2019 rating decision. Thus, the Veteran has chosen not to have evidence submitted after this rating decision considered. 

Threshold Issues

The VA requested the Veteran’s service treatment records (STRs) on July 10, 2017, August 14, 2017, September 18, 2017 and October 23, 2017 from the Records Management Center. On November 6, 2017 the VA Records Management Center responded that multiple searches had been conducted of the files and no records were found. The reserve duty treatment records provided to the VA include a portion of the STRs from the Veteran’s four year period of active duty service which include a chronologic problem list, medication records and treatment summaries from September 2004 forward which reflect treatment for two full-term pregnancies delivered in 2005 and early 2008, and an ankle and elbow sprain. These STRs do not refer to complaints or treatment of a hip or nasal injury or condition.

On November 4, 2016, the VA forwarded a letter to the Veteran advising her of the website which allows her to upload documents directly to the VA and requesting verification of her military service. On November 8, 2017, an Information Report (VADIR) was associated with the evidentiary file which details the dates of the Veteran’s active duty service and her active duty for training (ACDUTRA), as is reflected above.

On March 18, 2018, the VA sent a letter to the Veteran verifying her request for reconsideration of her claim for nose condition and trochanteric pain syndrome, claimed as left and right hip conditions, and inviting her to identify or submit new evidence related to the previous denials of service connection due to the conditions neither occurring in or being caused by service. 

The Board notes that Veteran's STRs, with the exception of the portions of the Veteran’s STRs noted above, are admittedly unavailable. In this circumstance the Board has a heightened obligation to explain its findings and conclusions and to carefully consider applying the benefit-of-the-doubt rule. See Cuevas v. Principi, 3 Vet. App. 542, 548 (1992); O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991).

The Board must also point out, however, that the O'Hare precedent does not raise a presumption that the missing medical records, if available for consideration, necessarily would support the claim. In other words, to the extent that the complete STRs are missing, it is indeed unfortunate, however it does not lower the legal standard requiring competent and credible evidence to support a claim for service connection; rather, the Board's obligation to discuss and evaluate the evidence is heightened. See Russo v. Brown, 9 Vet. App. 46 (1996); see also Ussery v. Brown, 8 Vet. App. 64 (1995). 

As reflected above, the Board has recharacterized the issues as nasal disorder and bilateral hip disorder in consideration of the applicable evidence of record. In this respect, the Board notes that the United States Court of Veterans Appeals (Court) held that when a claimant makes a claim, s/he is seeking service connection for symptoms, regardless of how those symptoms are diagnosed or labeled. See Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009).

New and Relevant Evidence 

The Veteran seeks readjudication of a previously denied claim for entitlement to service connection for nasal disorder and bilateral hip disorder. 

An October 2018 rating decision confirmed and continued a nonfinal January 2018 rating decision which denied both claims in the absence of evidence that the claimed disorders either occurred in or were otherwise caused by service. 

In January 2020, the Veteran filed a Form 10182 Decision Review Request: Board Appeal (Notice of Disagreement) to reopen these service connection claims.

Under the AMA framework, “Within one year from the date on which the agency of original jurisdiction issues a notice of a decision on a claim . . . a claimant may elect one of the following administrative review options by timely filing the appropriate form …” See 38 C.F.R. §§ 3.156(d), 3.2500.

“Relevant evidence” is evidence that tends to prove or disprove a matter at issue. 38 C.F.R. § 3.2501(a)(1).

In November 2019, the AOJ noted receipt of the Veteran’s lay statement and updated VA treatment records through November 2019. The AOJ opined that this body of materials did not constitute new and relevant evidence because it does not prove or disprove a matter at issue within the Veteran’s claim. However, the Board observes that the Veteran’s lay statement provides details of in-service occurrences related to the hip and nasal disorders. As noted above, the standard for relevant evidence is evidence that tends to prove or disprove a matter in issue. The Board finds that the materials do constitute new and relevant evidence as the existence of an inservice occurrence is relevant and, under this standard, the claims must be reconsidered. 

Accordingly, new and relevant evidence has been submitted for both the bilateral hip disorder claim and the nasal disorder claim and the claims will be readjudicated.

Service Connection for a Nasal Disorder

The Veteran contends that she has a nasal disorder that was incurred in, aggravated by, or otherwise attributable to, service. In particular, she claims she took several blows to the face during combat training that caused a deviated septum and chronic nasal problems thereafter.

As a threshold matter, “veteran” status must be established as a condition of eligibility for service connection benefits. Bowers v. Shinseki, 26 Vet. App. 201, 206 (2013) (observing that it is “axiomatic that, to receive VA disability compensation benefits, a claimant must first establish veteran status”). 

Under the law, active military service includes (1) active duty (AD), but also (2) any period of active duty for training (ACDUTRA) during which the individual concerned was disabled or died from a disease or an injury incurred or aggravated in the line of duty, and (3) any period of inactive duty training (INACDUTRA) during which the individual concerned was disabled or died from an injury, but not a disease, incurred or aggravated in the line of duty or from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident that occurred during such training. 38 U.S.C. § 101 (24)(B); 38 C.F.R. § 3.6(a).

Here, the Veteran has not yet established veteran status for any periods of military service other than January 2004 to January 2008 in the U.S. Army and active duty for training (ACDUTRA) from January 4 to January 7, 2010; January 11 to January 14, 2010; and January 20, 2010 to January 30, 2010. 

For any “veteran status” period, service connection may where the evidence shows: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called “nexus” requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

The available STRs during the Veteran’s active duty indicates only one March 2007 visit for upper respiratory complaints at which time the Veteran’s examination revealed no nasal discharge, normal nasal mucosa without polyps, and no deviation of the nasal septum. Her records do not confirm any complaints, treatment, or diagnoses related to “blows” to the face or any other trauma to the nose. Indeed, as will be outlined below, there is evidence to the contrary.

During her period of ACDUTRA, similarly, there is no indication the Veteran developed a chronic nasal condition or was in any nose-related injury.

Rather, the Veteran was seen complaining of nasal congestion-related complains starting on or around April 2011. She underwent deviated septum correction twice through the years, and more recently has been treated for various allergy-related conditions, such as allergic rhinitis. An ENT specialist consultation in January 2017 specifically noted the Veteran had no history of any nasal trauma.

In short, her deviated septum and nasal congestion with allergies were first incurred after her active duty and ACDUTRA periods of service. To the extent they occurred during any period of INACUDTRA, there is no indication they are a result of a nasal trauma, and indeed, in January 2017, an ENT specialist specifically indicated the Veteran’s condition was not a result of trauma. Thus, her nasal condition is a result of disease and not injury. Thus, her condition cannot be service-connected by virtue of a period of INACDUTRA. 

Again, the Veteran claims her nasal condition, to include the deviated septum and the residuals from the correction surgery, are due to “blows” in the face she incurred during active duty combat training. There is no confirmation of any such trauma and, indeed, there is evidence to the contrary.

While the Board finds the Veteran competent to report on her own in-service experiences, the evidence contradicts her recollections and, therefore, the Board does not find her recollections credible.

The Board may consider many factors when assessing the credibility and weight of lay evidence, including statements made during treatment, self-interest or bias, internal consistency, and consistency with other evidence. Caluza v. Brown, 7 Vet. App. 498, 512 (1995), aff’d, 78 F. 3d 604 (Fed. Cir. 1996). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). A layperson is generally not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183, 186 (1997); see also Bostain v. West, 11 Vet. App. 124, 127 (1998).

Here, the Board takes special notice of the available STRs from active duty and several years of reserve treatment examinations that are devoid of any mention of nasal or facial trauma or other in-service occurrence. It does not seem plausible that if the Veteran received “blows to the face” during combat training, she would not see a doctor. Especially where, as here, she sought medical treatment for many other ailments. The Veteran saw doctors repeatedly for annual examinations and she also saw doctors repeatedly for nasal complaints, to include congestion and the deviated septum correction. Within those treatment records, she never mentioned a “blow to the face” as part of her relevant medical history pertaining to her nose. The Board finds this incredible. The Veteran’s symptoms of chronic nasal congestion are chronicled exhaustively in her-post active duty VA treatment records by many providers. A treatment record in 2013 notes that her nasal surgery in 2012 was for chronic nasal congestion and that her nasal septal deviation is atraumatic. The treatment records include several consultations with two VA ENT specialists who offered their diagnostic impressions of the Veteran’s chronic nasal congestion including their recommendations for and performance of nasal surgeries in 2012 and in March 2018. 

Despite the fact that the Veteran now claims facial blows in combat training, she did not mention it to any of the numerous physicians that she saw from 2008 to 2019, and there is no mention of or consideration given by her treating physicians to a traumatic injury as the cause of the Veteran’s chronic nasal congestion or nasal septal deviation. In an October 2017 ENT surgeon consult, the Veteran did not disclose her facial blows to the ENT as possibly associated with her deviated septum. 

For these reasons, while the Veteran is certainly competent to describe in-service facial trauma, the Board does not find her description of in-service facial blows to be credible and, therefore, puts more probative value on the objective evidence of record.

It is noted that the Veteran has not been provided with a VA examination and medical opinion on the issue of direct causation for her nasal disorder. As outlined above, the evidence of record does not establish that the Veteran suffered "an event, injury or disease in service," so it is not necessary to obtain a VA medical opinion regarding etiology. 38 U.S.C. § 5103A (d); 38 C.F.R. § 3.159(c)(4). The Court has held that VA is not required to provide a medical examination when there is not credible evidence of an event, injury, or disease in service. See Bardwell v. Shinseki, 24 Vet. App. 36 (2010). Additionally, conclusory generalized lay statements that a service event or illness caused the claimant's current condition (or lack thereof) are insufficient to require the Secretary to provide an examination. See Waters v. Shinseki, 601 F.3d 1274, 1278 (2010).

While the Veteran does have evidence of a nasal disorder marked by recurrent turbinate hypertrophy, there is no evidence that this problem is associated with active duty service or a period of ACDUTRA. Her problems were documented as beginning 9 months to a year before her April 2011 VA visit for chronic nasal congestion at which point the Veteran had no active duty for training (ACDUTRA). Again, with respect to inactive duty, only an injury, and not a disease, causing disability during inactive duty for training would permit veteran status for service connection. The Veteran did not disclose any injury to her nose at any time in any of the numerous medical visits or surgical interventions at the VA for her nasal disorder. Accordingly, any nasal condition of the nasal turbinates that developed after the Veteran’s active duty service or outside of periods of ACDUTRA in January 2010 is not legally sufficient to confer veteran status for purposes of disability benefits. 38 U.S.C. § 101(24); 38 C.F.R. § 3.6(a).

Considering all the evidence of record, the Board finds that the preponderance of the evidence does not warrant granting service connection for a nasal disorder. There are no doubts to be resolved. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

REASONS FOR REMAND

Bilateral Hip Disorder 

In October 2017, the Veteran was afforded a VA disability evaluation for hip and thigh. The Veteran reported daily pressure and pain in both hips over the last several years after doing ruck marches. 

The VA examiner offered his opinion, based upon his knowledge, training and experience and his review of currently accepted medical principles contained in authoritative journals, that the Veteran’s hip disorder was less likely than not proximately due to or the result of injury during military service from 2004-2008. Further, the examiner opined that the etiology of the Veteran’s current condition was an injury that occurred during a ruck march during reserve training in June 16, 2013.

The VADIR report of active duty service has no dates corresponding to June 16, 2013 date of injury claimed. Throughout the Veteran’s VA treatment records the Veteran indicates that she performs administrative work for her reserve unit and that she periodically performs ruck marches with her unit. The Veteran has submitted military service treatment records through April 2016 of treatment apparently received while on reserve duty for which there is no corresponding proof or confirmation of service. 

Accordingly, Board notes that there is a pre-decisional error in the duty to assist the Veteran and requests that a complete record of the dates of active duty and inactive duty reserve service be obtained in order to properly adjudicate the claim for bilateral hip disorder. 

The matters are REMANDED for the following action:

1. Determine the Veteran's dates of ACDUTRA and INACDUTRA from 2008 to the present with particular attention to a determination of the Veteran’s duty status on June 16, 2013. Associate all relevant information regarding the Veteran’s ACDUTRA and INACDUTRA with the electronic claims file. 

2. Return the file to the Board for adjudication. 

 

SHEREEN M. MARCUS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Denise Adams Hill, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.